2000 ND 95

**Dennis THOMPSON, Plaintiff and Appellee,**

v.

**ASSOCIATED POTATO GROWERS, INC., a North Dakota corporation, Defendant and Appellant,**

**and**

**Duane Hovet, Defendant.**

**No. 990296.**

Supreme Court of North Dakota.

May 11, 2000.

54

Joel F. Arnason (on brief), Arnason Law Office, Grand Forks, N.D., and Dennis Thompson (argued), for plaintiff and appellee.

Donald J. Olson (argued) and Darin B. Barker (appeared), Camrud, Maddock, Olson & Larson, Ltd., Grand Forks, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Associated Potato Growers, Inc., appealed from a judgment awarding Dennis Thompson damages for wrongful termination of his employment. We hold an employer's decision to terminate an employee for cause must be assessed by the trier of fact under an objective standard of reasonableness. Because the trial court did not apply that standard in deciding Associated did not have cause to terminate Thompson, we reverse and remand for further proceedings.

I

[¶ 2] Associated is a cooperative corporation in the business of storing, washing, and selling potatoes belonging to its members. Associated hired Thompson as general manager under a written contract that ran from August 1, 1991, through July 31, 1992, and allowed Thompson "to extend and renew [the] agreement for up to two one year consecutive terms" by giving Associated "notice of his intention to renew and extend not later than 60 days prior to the end of the then current term." Thompson extended the written contract from August 1, 1992, through July 31, 1993.

[¶ 3] On May 28, 1993, Associated's board of directors met to discuss allegations that Thompson had altered grades of potatoes and changed growers' records. The minutes of the meeting state Thompson admitted changing growers' records but claimed he had the right to make the changes. The minutes also indicate the Board and other Associated office employees did not believe Thompson had the right to change growers' records. At that meeting, the Board decided to give Thompson a two-week leave of absence and asked Associated's accountants to perform a "mini-audit" of growers' records. On May 29, Thompson informed Associated he had elected to extend the parties' written employment contract for another year.

[¶ 4] Thompson was not present at a June 10, 1993, meeting, where the Board reviewed the accountants' "mini-audit" and decided to terminate Thompson, without cause, subject to legal review of his employment contract. Thompson was present at a June 14 meeting, where the Board asked him to resign, but he refused. The minutes of the June 14 meeting reflect Thompson agreed to meet with the accountants and a committee of Board members to explain his actions. On June 16, Thompson met with the Board subcommittee and accountants. On June 17, the Board subcommittee reported to the full Board, which thereafter decided to terminate Thompson for cause. Associated notified Thompson his employment was terminated effective June 18, 1993, under paragraph 14 of the employment contract, which was entitled "Termination for Cause" and provided "[t]he EMPLOYER may terminate this Agreement immediately for material violation of the EMPLOYER'S policies or material breach of the provisions of this Agreement, including specifically the failure to perform his duties as required hereunder."

[¶ 5] Thompson sued Associated for wrongful termination.[1] After a bench trial, the trial court decided Thompson did not commit a material violation of the employer's policies or a material breach of the provisions of the employment agreement, and Thompson's actions were not dishonest but were intended to insure fair compensation for potato growers. The court decided Associated did not have cause to terminate Thompson and awarded him $129,400 in damages.

[¶ 6] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Associated's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.[2]

## II

[¶ 7] We review a trial court's findings of fact under the clearly erroneous standard of N.D.R.Civ.P. 52(a). A finding of fact is clearly erroneous if it is induced by an erroneous application of the law, if no evidence exists to support it, or if on the entire record, we are left with a definite and firm conviction a mistake has been made. *Brown v. Brown*, 1999 ND 199, ¶ 10, 600 N.W.2d 869. Questions of law are fully reviewable on appeal. *Haff v. Hettich*, 1999 ND 94, ¶ 9, 593 N.W.2d 383.

## III

[¶ 8] Under North Dakota law, employment is presumed to be at will, and an employer may terminate an employee with or without cause. N.D.C.C. § 34–03–01;

*Bykonen v. United Hospital*, 479 N.W.2d 140, 141 (N.D.1992); *Hillesland v. Federal Land Bank Ass'n*, 407 N.W.2d 206, 210–11 (N.D.1987); *Bailey v. Perkins Restaurants, Inc.*, 398 N.W.2d 120, 122 (N.D. 1986). By contract, however, the parties can modify the at-will presumption and define their contractual rights regarding termination. *See Bykonen*, at 141; *Hillesland*, at 211; *Bailey*, at 122.

### A

[¶ 9] Associated employed Thompson under a written employment contract, and we initially consider the scope of the parties' employment promise under that written contract. The construction of a written contract to determine its legal effect is a question of law. *Olson v. Souris River Telecomms. Coop., Inc.*, 1997 ND 10, ¶ 8, 558 N.W.2d 333. On appeal we will independently examine and construe the contract to determine whether the trial court erred in construing it. *Eldridge v. Evangelical Lutheran Good Samaritan Soc.*, 417 N.W.2d 797, 799 (N.D.1987). We construe contracts as a whole to give effect to each provision to determine the parties' intent. *Olson*, at ¶ 8; *Eldridge*, at 799.

[¶ 10] The parties' written contract authorized the general manager to "direct [Associated] with the objective of providing maximum patron equity, return on invested capital and providing growers with efficient facilities for washing, processing and marketing potatoes" and "develop policies and goals that cover company operations, personnel, financial performance, sales performance and growth." The parties'

---

1. Thompson also sued Duane Hovet, an employee of Associated, alleging Hovet tortiously interfered with Thompson's employment relationship with Associated. The trial court dismissed Thompson's claim against Hovet, and Thompson has not appealed that decision.

2. Associated's notice of appeal says the appeal is from "the Memorandum Opinion, Findings of Fact, Conclusions of Law, and Order for Judgment." We have held an attempted appeal from an order for judgment or a memorandum decision will be treated as an appeal from a subsequently entered consistent judgment. *Dunseith Sand & Gravel Co. v. Albrecht*, 379 N.W.2d 803, 805 (N.D.1986); *Federal Savings & Loan Ins. Corp. v. Albrecht*, 379 N.W.2d 266, 267 (N.D.1985). Here, there is a subsequently entered judgment consistent with the trial court's memorandum decision and order for judgment. Accordingly, we treat this appeal as from the judgment.

written contract generally outlined duties and responsibilities for the general manager and also provided:

14. Termination for Cause. The EMPLOYER may terminate this Agreement immediately for material violation of the EMPLOYER'S policies or material breach of the provisions of this Agreement, including specifically the failure to perform his duties as required hereunder. In the event of termination for cause, the EMPLOYEE shall be paid at the usual rate of his annual Base Salary through the date of termination specified in any notice of termination.

[¶ 11] Other courts have construed employment contracts to permit an employer to terminate an employee for good cause even if the contract provides reasons for termination which do not specifically mention good cause. *See Mertyris v. P.A.M. Transport, Inc.*, 310 Ark. 132, 832 S.W.2d 823, 825 (1992); *H. Vincent Allen & Assocs. v. Weis*, 63 Ill.App.3d 285, 19 Ill.Dec. 893, 379 N.E.2d 765, 772 (1978); *Wolfe v. Graether*, 389 N.W.2d 643, 657 (Iowa 1986); *Walpus v. Milwaukee Elec. Tool Corp.*, 248 Neb. 145, 532 N.W.2d 316, 322–23 (1995). *See generally* 1 Henry H. Perritt, Jr., *Employee Dismissal Law and Practice* § 6.19 (4th ed.1998). In *Mertyris*, at 825, for example, the Arkansas Supreme Court said it would be unreasonable and absurd to interpret an employment manual as implicitly foreclosing termination for criminal acts or wrongful conduct beyond the conduct specifically listed in the manual as grounds for termination. The court refused to hold a list of conduct justifying automatic termination constituted an implied promise not to dismiss an employee for criminal conduct, wrongful act, or other legitimate reason. *Id.*

[¶ 12] Here, paragraph 14 of the parties' written contract specifically provides for "Termination for Cause" in language permitting an employer to terminate the "Agreement immediately for material violation of the EMPLOYER'S policies or material breach of the provisions of this

Agreement, including specifically the failure to perform his duties as required hereunder." The word "including" ordinarily is not a word of limitation, but a word of enlargement. *See Lucke. v. Lucke*, 300 N.W.2d 231, 234 (N.D.1980). Although Associated and Thompson could have contracted for an exclusive list of grounds for termination, the language of this contract does not say termination for cause is limited only to the reasons specifically enumerated in paragraph 14. In the absence of language expressly limiting the reasons for termination, we decline to construe the provisions of paragraph 14 as words of limitation. Rather, we construe the parties' contract to permit termination for cause, which includes, but is not limited to, the reasons stated in paragraph 14.

## B

[¶ 13] We next consider whether there was a breach of the employment contract, which raises issues about institutional responsibility for the determination of cause for termination. Relying on *Cotran v. Rollins Hudig Hall Int'l, Inc.*, 17 Cal.4th 93, 69 Cal.Rptr.2d 900, 948 P.2d 412 (1998), Associated argues the trial court, as the trier of fact, impermissibly substituted its judgment for Associated's determination it had cause to terminate Thompson.

[¶ 14] *Cotran* involved an employee hired under an implied agreement permitting termination for good cause. 948 P.2d at 414. The employer fired the employee on the basis of its investigation and conclusion the employee had more likely than not committed sexual harassment. *Id.* at 415. The employee denied the sexual harassment. *Id.* at 416. The trial court instructed the jury to decide whether the claimed acts occurred and refused to instruct the jury not to substitute its opinion for employer's decision. *Id.* The jury decided the employee had not engaged in sexual harassment and awarded the employee damages for wrongful discharge. *Id.*

[¶ 15] The California Supreme Court granted review to clarify the role of the

trier of fact in evaluating an employer's decision to terminate an employee for good cause. *Cotran*, 69 Cal.Rptr.2d 900, 948 P.2d at 416. The court concluded the role of the trier of fact was not to conduct a de novo review of the factual basis for the employer's decision. *Id.* at 418. Rather, the court decided the role of the trier of fact was to assess the objective reasonableness of the employer's factual determination and defined good cause to mean "fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual. A reasoned conclusion, in short, supported by substantial evidence gathered through an adequate investigation that includes notice of the claimed misconduct and a chance for the employee to respond." *Id.* at 422.

[¶ 16] In reaching that conclusion, the California Supreme Court rejected the rationale of *Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880, 895–97 (1980), in which the Michigan Supreme Court concluded the jury, in the first instance, decided whether an employee committed the acts leading to discharge and whether those acts constituted good cause. *Cotran*, 69 Cal.Rptr.2d 900, 948 P.2d at 418. The California Supreme Court followed decisions from Nevada, New Mexico, Oregon, and Washington, which "relied for analytical support on the contract model of the employment relationship out of which contemporary limitations on the at-will doctrine arose." *Id.* at 419. *See Southwest Gas v. Vargas*, 111 Nev. 1064, 901 P.2d 693 (1995); *Kestenbaum v. Pennzoil Co.*, 108 N.M. 20, 766 P.2d 280 (1988); *Simpson v. Western Graphics Corp.*, 293 Or. 96, 643 P.2d 1276 (1982); *Baldwin v. Sisters of Providence*, 112 Wash.2d 127, 769 P.2d 298 (1989).

[¶ 17] The California Supreme Court recognized an employer may contract away its right to decide whether facts constituting cause for termination exist, but an agreement to contract away that prerogative would not be inferred. *Cotran*, 69 Cal.Rptr.2d 900, 948 P.2d at 419–20, *citing Simpson*, 643 P.2d at 1279; *Baldwin*, 769 P.2d at 304. *See also Vargas*, 901 P.2d at 700. In adopting the objective good-faith standard for evaluating an employer's decision, the court outlined "pragmatic" reasons for its conclusion that a trier of fact should not conduct a de novo review of the employer's reasons for terminating an employee:

[A] standard permitting juries to reexamine the factual basis for the decision to terminate for misconduct—typically gathered under the exigencies of the workaday world and without benefit of the slow-moving machinery of a contested trial—dampens an employer's willingness to act, intruding on the "wide latitude" ... recognized as a reasonable condition for the efficient conduct of business....

Equally significant is the jury's relative remoteness from the everyday reality of the workplace. The decision to terminate an employee for misconduct is one that not uncommonly implicates organizational judgment and may turn on intractable factual uncertainties, even where the grounds for dismissal are fact specific. If an employer is required to have in hand a signed confession or an eyewitness account of the alleged misconduct before it can act, the workplace will be transformed into an adjudicatory arena and effective decisionmaking will be thwarted. Although these features do not justify a rule permitting employees to be dismissed arbitrarily, they do mean that asking a civil jury to reexamine in all its factual detail the triggering cause of the decision to dismiss—including the retrospective accuracy of the employer's comprehension of that event—months or even years later, in a context distant from the imperatives of the workplace, is at odds with an axiom underlying the jurisprudence of wrongful termination.... That axiom ... is the need for a sensible latitude for man-

agerial decisionmaking and its corollary, an optimum balance point between the employer's interest in organizational efficiency and the employee's interest in continuing employment.

The rule we endorse today, carefully framed as a jury instruction and honestly administered, will not [permit discharge decisions to be based on subjective reasons] but by balancing the interests of *both* parties, will ensure that "good cause" dismissals continue to be scrutinized by courts and juries under an objective standard, without infringing more than necessary on the freedom to make efficient business decisions. At least one state high court has reasoned that striking a fair balance between the interests of the parties to the employment contract through an objective just-cause standard will *promote* the continued use of such limitations on the at-will doctrine; imbalances, on the other hand, encourage employers to adopt defensive measures by "remov[ing] such [just-cause] provisions from their [employment] handbooks."

*Cotran,* at 420–21.

[¶ 18] There are related policy reasons for precluding a trier of fact from conducting a de novo review of an employer's termination decision in this context. Associated owed a fiduciary responsibility to its shareholders. *See Production Credit Ass'n v. Ista,* 451 N.W.2d 118, 121 (N.D. 1990). Allowing a trier of fact to second guess an employer's decision under these, or similar, circumstances could impose significant conflicts on employers in terms of their contractual relationship with employees and their fiduciary responsibilities. *See Vargas,* 901 P.2d at 702 n. 5 (noting an employer's similar predicament for sexual harassment charges against an employee).

[¶ 19] The rationale of *Cotran* has been recognized as the better perspective for assessing whether an employer has cause to terminate an employee. *See generally* 1 Perritt, § 6.55, p. 458 (when a contract is unclear about who resolves fact disputes and determines good cause, the approach exemplified by *Simpson* is better than the approach in *Toussaint* ).

[¶ 20] We conclude the objective standard exemplified by *Cotran* is the better approach for assessing an employer's decision about whether an employee actually committed the acts leading to discharge, and, if so, whether the act constituted cause for termination. *See Kestenbaum,* 766 P.2d at 287–88; *Baldwin,* 769 P.2d at 304. *See generally* 1 Perritt, §§ 6.55, 6.57. We adopt the objective good-faith standard under which an employer is justified in terminating an employee for good cause for "fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual. A reasoned conclusion, in short, supported by substantial evidence gathered through an adequate investigation that includes notice of the claimed misconduct and a chance for the employee to respond." *See Cotran,* 69 Cal.Rptr.2d 900, 948 P.2d at 422. We also agree with the California Supreme Court that the parameters of an adequate investigation do not compel the same formal proceedings as a court trial. *Id. Cf. Beckler v. North Dakota Workers Comp. Bur.,* 418 N.W.2d 770, 775 (N.D. 1988) (due process does not require pretermination evidentiary hearing). Rather, an adequate investigation may be satisfied by a variety of flexible procedures which afford employees a fair opportunity to present their position. *Cotran,* at 422.

[¶ 21] Here, the trial court did not apply an objective good-faith standard for evaluating Associated's decision to terminate Thompson. The court cited several factors to support its decision that Associated did not have cause to terminate Thompson. First, the court said Associated's lack of written policies and the general manager's broad responsibilities indicated cause did not exist to terminate

Thompson. The court said Thompson had broad authority to accomplish the goals of Associated and no written policies precluded him from changing grades of potatoes. The court decided, by changing grades of potatoes in some growers' records, Thompson merely intended to ensure growers were fairly compensated. Second, the court said the insufficiency of Associated's investigation and Thompson's lack of opportunity to respond indicated Associated lacked cause to terminate Thompson. Third, the court decided the "timing" of Associated's actions indicated cause for termination did not exist, citing the following sequence of events to support its "timing" conclusion—the June 10, 1993, meeting where the Board decided to terminate Thompson without cause; four days later, with no new factual information, the Board asked for Thompson's resignation; and three days later, without any new factual information, the Board decided to terminate Thompson with cause. The court said the sudden and unexplained decision to terminate Thompson with cause, rather than without cause, suggested reasons other than cause may have motivated Associated's decision.

[¶ 22] The trial court did not decide whether Associated had fair and honest reasons, regulated by an objective good-faith determination, for terminating Thompson. The court also did not find whether Associated's reasons for terminating Thompson were trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual. Moreover, the court's statements about the degree of investigation in this case suggest the court believed a more formalistic procedure was required. The court's decision does not reflect application of an objective, good-faith analysis of Associated's decision to terminate Thompson. We conclude the trial court erred by not applying an objective good-faith standard for deciding whether Associated had cause to terminate Thompson.

IV

[¶ 23] We reverse the judgment and remand for further proceedings consistent with this opinion. On remand, the court may, in its discretion, take additional evidence or issue new findings of fact based on the evidence now in the record.

[¶ 24] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, JJ., concur.