#23684-a-JKK

**2006 SD 21**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ROGER VETTER,                                   Plaintiff and Appellee,

    v.

CAM WAL ELECTRIC
COOPERATIVE, INC.,                            Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
WALWORTH COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE LARRY H. LOVRIEN
Judge

\* \* \* \*

THOMAS W. CLAYTON
Clayton Law Office                              Attorney for plaintiff
Sioux Falls, South Dakota                    and appellee.

RICHARD D. CASEY
NICOLE NACHTIGAL EMERSON of
Lynn, Jackson, Shultz & Lebrun, PC      Attorneys for defendant
Sioux Falls, South Dakota                    and appellant.

\* \* \* \*

ARGUED ON JANUARY 10, 2006

OPINION FILED **03/08/06**

#23684

KONENKAMP, Justice

[¶1.]     Must an employer establish that an employee actually committed misconduct in order to demonstrate good cause to fire the employee?  In this wrongful termination suit, the employer requested a jury instruction that would have limited the jury's role in reviewing the factual basis for the employer's decision to fire its employee.  With this proposed instruction, the jury would not decide whether the employee had in fact committed an infraction justifying termination.  Rather, the jury would decide only whether the employer, acting in good faith after an appropriate investigation, had reasonable grounds for believing that the employee had committed the infraction.  The circuit court refused the instruction, and the jury returned a verdict against the employer.  On the employer's appeal, we conclude that because this proposed instruction would have contravened the employee termination provisions of the collective bargaining agreement, the court did not err in refusing to give it.  Therefore, we affirm.

## Background

[¶2.]     On September 9, 2002, after almost thirty years as a lineman for Cam Wal Electric Cooperative, Inc., Roger Vetter was fired for violating Cam Wal's policy against drinking alcohol on company property.  Vetter was aware of this policy, but asserted that during all the years he worked for the company, except for one brief period, "employees and management consistently drank beer and alcoholic beverages together on the premises."

[¶3.]     The circumstances leading to Vetter's termination began on Friday, July 19, 2002, near the end of the workday.  Vetter and another employee, Shawn

-1-

Schmidt, had just returned after working in the field. Vetter's time sheet showed that he had worked ten hours that day. At that point, Vetter thought that "[w]ith no more work assignments, and with the truck put away and time cards filled in, their day's work was now over." Vetter and Schmidt decided to look up some information on the company computers. On their way, they grabbed two beers each from a refrigerator in the Cam Wal social room.

[¶4.] When the general manager, Jeff Bonn, observed Vetter and Schmidt with the beers, he said nothing about it, but engaged them in general conversation. The next day, however, Bonn checked both employees' time records and the browser histories from the computers they used to see if Vetter and Schmidt were "off the clock" when they were drinking at work. Because the computer history revealed that a website had been visited at 5:05 p.m. and the time cards indicated 5:30 p.m. as the end of Vetter and Schmidt's day, Bonn believed that they violated the company's no drinking policy.

[¶5.] Bonn contacted Cam Wal's corporate attorney. After conferring with Bonn, the attorney interviewed Vetter and Schmidt on July 23, 2002. Then, one week later, Vetter and Schmidt each received written notice that they had violated Article IX, section 1.c.(7) of the Collective Bargaining Agreement between Cam Wal and Local No. 426 of the Internal Brotherhood of Electrical Workers, AFL-CIO. That provision forbade the "[u]se of intoxicating liquor on the job or in/on Cooperative property." On September 9, 2002, Vetter and Schmidt were fired. Along with his job, Vetter lost his health insurance, life insurance, vacation pay, holiday pay, retirement benefits, and savings program. In later explaining its

decision, Cam Wal said that it "had reasonable grounds for believing [that] misconduct occurred and otherwise acted fairly, honestly and in good faith[.]"

[¶6.]      Vetter brought suit against Cam Wal, alleging wrongful termination in violation of the terms of the collective bargaining agreement.  He claimed that Cam Wal discharged him "arbitrarily" and "unfairly," in violation of Article IV, section 2 of the agreement.  He also averred that the company waived its right to enforce the no drinking policy in the contract when it knowingly allowed employees and management to drink on the premises.  He contended that Cam Wal should be estopped from exercising its right under the agreement to fire him because of the company's own conduct in allowing violations to occur in the past without consequence.

[¶7.]      According to Vetter, "[d]rinking alcohol on Cam Wal premises was a commonplace occurrence."  In Vetter's recollection after thirty years at Cam Wal, the only period during which drinking on the premises was forbidden was when Brad Scott was Cam Wal's general manager.  During his tenure, Scott announced that drinking at Cam Wal would no longer be allowed.  After Scott left, however, Vetter recalled that the drinking started again.  This included the time Bonn was the general manager.  Bonn conceded that alcohol had been consumed on the company premises in the past, but he said, "It was always after hours.  It was rare occasions."

[¶8.]      The beer Vetter and Schmidt obtained came from the refrigerator in the Cam Wal social room and was purchased by Cam Wal for a company picnic the previous summer.  Cam Wal allowed the beer to be stored there, even though there

was a company policy prohibiting alcohol in Cam Wal's social room. Vetter testified that Bonn knew the beer was stored there. He also said that the linemen would "walk up to the social room, grab a beer or more, and bring it back to the linemen's room to drink."

[¶9.] At trial, Cam Wal requested a jury instruction on what it believed should be the jury's limited fact finding role in wrongful termination cases. But the court declined to instruct the jury on this theory. Under the court's instructions, Vetter had the burden of proving that an agreement existed, that it was breached, and that he was damaged. He also had the burden to prove waiver and estoppel. At the close of the case, the jury returned a verdict for Vetter for $290,000 plus interest. On appeal, Cam Wal asserts that the jury instructions were insufficient, incorrect, and prejudicial.

## Standard of Review

[¶10.] Before we begin our analysis, we take this opportunity to clarify our standard of review on jury instructions. A trial court has discretion in the wording and arrangement of its jury instructions, and therefore we generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard. *See* Luke v. Deal, 2005 SD 6, ¶11, 692 NW2d 165, 168; Parker v. Casa Del Rey-Rapid City, Inc., 2002 SD 29, ¶5, 641 NW2d 112, 116. However, no court has discretion to give incorrect, misleading, conflicting, or confusing instructions: to do so constitutes reversible error if it is shown not only that the instructions were erroneous, but also that they were prejudicial. First Premier Bank v. Kolcraft Enterprises, Inc., 2004 SD 92, ¶40, 686 NW2d 430, 448 (citations

omitted). Erroneous instructions are prejudicial under SDCL 15-6-61 when in all probability they produced some effect upon the verdict and were harmful to the substantial rights of a party. Accordingly, when the question is whether a jury was properly instructed overall, that issue becomes a question of law reviewable de novo.[1] Under this de novo standard, "we construe jury instructions as a whole to learn if they provided a full and correct statement of the law." *Id*, 2004 SD 92, ¶40, 686 NW2d at 448 (quoting State v. Frazier, 2001 SD 19, ¶35, 622 NW2d 246, 259 (citations omitted)).

## Analysis and Decision

[¶11.] Cam Wal believes that employers must be afforded discretion in making decisions to discharge employees for cause, without the threat of juries second guessing their business judgments. Thus, Cam Wal asks us to adopt the good-faith standard created by the California Supreme Court in *Cotran v. Rollins, Hudig Hall Int'l, Inc.*, 948 P2d 412 (Cal 1998). Under this standard, a jury in a wrongful termination case determines whether the employer, acting in good faith and following a reasonable investigation, had sufficient grounds for believing that cause existed to justify the employee's termination. *See id.* at 423. But the jury would not decide whether the employee actually committed the infraction giving rise to the termination. Absent this standard, Cam Wal believes that the jury here

---

1. We agree with those federal appellate courts that "are increasingly stating explicitly that review is de novo over the correctness of the instructions overall, while it is the failure to give a particular instruction that is reviewed for abuse of discretion." *See* 1 Childress and Davis, Federal *Standards of Review* § 4.23 (3d ed 1999).

was effectively placed in the position of being a "super-personnel department," allowing the jurors to decide what the appropriate discipline should have been based on their own interpretation of the facts.

[¶12.]     In *Cotran,* a case of an implied employment agreement not to terminate except for good cause, the employee was fired after his employer investigated and substantiated allegations that the employee had sexually harassed two fellow employees.  948 P2d at 415.  Cotran denied that he committed the sexual harassment and brought suit against his employer for wrongful termination.  His employment was not controlled by an express agreement, but the lower court interpreted a letter sent from the employer to Cotran to hold that he could not be terminated unless good or just cause existed.  *Id.* at 414 n1.  Then, the court instructed the jury that it should decide whether Cotran in fact committed the sexual harassment.  In a special verdict, the jury answered "no" to the question whether Cotran "engaged in any of the behavior on which [the employer] based its decision to terminate [Cotran's] employment."

[¶13.]     On appeal, the employer argued that it should not be "required to prove the acts of sexual harassment occurred."  It asserted that it should only be required to prove that it had a good-faith belief that the sexual harassment occurred after conducting a reasonable investigation.  The California Supreme Court agreed. It reasoned that juries should not have unfettered discretion when reviewing an employer's factual conclusions to support a decision to terminate.  The court found that this particular employer, while it had impliedly agreed not to discharge Cotran

except for cause, did not otherwise relinquish its right to determine whether sufficient facts existed to constitute cause.

[¶14.]     Because the employment relationship was not further defined by contract or otherwise, the court created a definition of "cause" for juries to apply in "litigation alleging breach of an *implied agreement*."[2]  *See id*. (emphasis added). Applying the newly adopted definition of "cause," the court held that the proper inquiry for the jury was not whether the employee in fact committed the dischargeable act, but whether "the factual basis on which the employer concluded a dischargeable act had been committed [was] reached honestly, after an appropriate investigation and for reasons that [were] not arbitrary or pretextual[.]"

[¶15.]     *Cotran's* implied contract standard cannot easily transpose to our case because the written contract here articulates a separate and higher level of consideration.  Even when good cause can be found to terminate an employee's job, the collective bargaining agreement requires that a decision to "reprimand, suspend, discharge or otherwise discipline employees . . . shall not be exercised arbitrarily or unfairly to any employee[.]"  Moreover, by the *Cotran* court's own measure, its standard was expressly limited to cases of an implied employment relationship.  *See id.* at 414 n1.  Indeed, the court in *Cotran* distinguished its case

---

2.     According to the *Cotran* court, "good cause" can be defined as "fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual.  A reasoned conclusion, in short, supported by substantial evidence, gathered through an adequate investigation that includes notice of the claimed misconduct and a chance for the employee to respond."  *Id*. at 422.

from "[w]rongful termination claims founded on an *explicit* promise that termination will not occur except for just or good cause [that] may call for a different standard, depending on the precise terms of the contract provision." *Id.* (emphasis in original). However, Cam Wal cites a North Dakota case to illustrate that any distinction between an implied or express agreement is immaterial here.

[¶16.] In *Thompson v. Assoc. Potato Growers, Inc.*, 610 NW2d 53 (ND 2000), a case with an express employment agreement, the North Dakota Supreme Court adopted the *Cotran* standard. The employment contract empowered the employer to terminate an employee for any material breach of the employment policies or provisions. Thompson was fired after the employer conducted an investigation and concluded that Thompson had been dishonest. Thompson brought a wrongful termination action, arguing that he did not violate any of the employer's policies or provisions in the agreement and was not dishonest. In a bench trial, the lower court reviewed the employer's decision de novo. The judge concluded that Thompson was wrongfully terminated because his actions were not dishonest.

[¶17.] On appeal, the North Dakota Supreme Court agreed that Thompson's job could not be terminated except for cause based on the employment agreement. However, the court reached this conclusion by drawing an inference from the employment agreement, not by applying any express contract terms. To reach its decision, the court interpreted a provision that empowered the employer to terminate an employee for, among other reasons, a material violation of the employer's policies. It construed this provision to mean that an employee could not be terminated except for cause. Then, because the employment relationship was

not further defined by contract, the court adopted the good-faith standard articulated in *Cotran*.

[¶18.] In our case, the employment relationship is fully circumscribed by the terms of the employment contract: the collective bargaining agreement specifies all the rights and obligations of both employer and employee. It is under this contract that Vetter brought his claims and Cam Wal asserted its defenses. In Article IV, section 1 of the agreement, Cam Wal is empowered to "reprimand, suspend, discharge or otherwise discipline employees for cause." Then, in the section entitled, *"Discharge and Termination of Employment"* (Article IX, section 1.c.(7)), the agreement sets forth what conduct amounts to "cause." Included under cause is "[u]se of intoxicating liquor on the job or in/on Cooperative property." Nonetheless, section 2 of Article IV also requires that Cam Wal not exercise its rights and powers "arbitrarily or unfairly to any employee."

[¶19.] Cam Wal contended at trial that if it found in good faith based on a reasonable investigation that Vetter was drinking in violation of the employment agreement, then cause existed to justify Vetter's termination. Thus, Cam Wal requested the following jury instruction:

> The Collective Bargaining Agreement between plaintiff and defendant in this case specifies that the customary functions of the management for carrying on of the business and operation are recognized and vested exclusively with the defendant. These customary rights include the right of the defendant, as the employer, to suspend, discharge, or otherwise discipline employees for cause and otherwise generally manage the defendant, direct the defendant's work force and establish terms and conditions of employment. The contract further specifies that such right and power of the defendant shall not be exercised arbitrarily or unfairly to any employee.

> Under the contract, the term "cause" includes the right to discharge the plaintiff for use of intoxicating liquor on the job or in/on defendant's property.
>
> *A discharge for "cause" is one which is not for any arbitrary, capricious, or illegal reason and which is one based on facts (1) supported by substantial evidence and (2) reasonably believed by the employer to be true.*
>
> *In this case, you are not required to determine whether plaintiff in fact used intoxicating liquor on the job or on defendant's property.  Rather, your duty is to determine whether at the time the decision to terminate plaintiff's employment was made, defendant, acting in good faith and following an investigation that was appropriate under the circumstances, had reasonable grounds for believing the plaintiff had done so.*
>
> *If you find that the defendant had reasonable grounds to believe that sufficient cause existed to justify termination of plaintiff's employment, then your verdict must be for the defendant.*

(Emphasis added.)

[¶20.]	The court declined to give this proposed instruction and instead gave its instructions 15 and 16.

> Instruction 15:
>
> The collective bargaining agreement between plaintiff employee and defendant employer constituted a contract between the parties.
>
> This contract provided that the customary functions for the management and the operation of the business were vested exclusively with the employer and included the right to direct the work force and to establish terms and conditions of employment.
>
> Under the contract, employer had the right to reprimand, suspend, or otherwise discipline employees for "cause."  The term "cause" for which an employee may be discharged included, among other things, the use of intoxicating liquor on the job or in/on Cam Wal property.

Instruction 16:

Under the terms of the collective bargaining agreement, the employer's various management rights and powers, including the right to discharge an employee for cause, could not be exercised arbitrarily or unfairly to any employee.

[¶21.] Cam Wal asserts that the court's instructions were inadequate and prejudicial because they did not inform the jury of its limited role as trier of fact. Cam Wal wants us to join those courts that have adopted the *Cotran* good-faith standard.[3] Although several of the wrongful termination decisions Cam Wal cites are distinguishable from our case, we acknowledge that a genuine split of authority exists on whether this good-faith standard should be imposed on employment contracts.[4] In some cases, the decisions applying the good-faith standard deal only

---

3. In some of the cases Cam Wal relies on, the right to terminate for cause was not further defined, notwithstanding an express or implied employment agreement. In two of the cases, the good-faith standard can only be considered dicta because the employment relationships were considered at will, unlimited by either an express or implied agreement. *See* Almada v. Allstate Ins. Co., Inc., 153 FSupp2d 1108, 1114 (DAriz 2000) (at-will employee, but discussed just cause in dicta); Maietta v. United Parcel Serv., 749 FSupp 1344, 1362 (DNJ 1990) (employment terminable at will and just cause was discussed in dicta). The cases holding as a matter of law that a good-faith standard applies in wrongful termination cases are: *Logan v. Bennington Coll. Corp.*, 72 F3d 1017, 1024 (2dCir 1995) (faculty handbook created employment contract); *Chrvala v. Borden, Inc.*, 14 FSupp2d 1013, 1017 (SDOhio 1998) (employee at will, but agreement alluded to requirement of cause); *Cotran*, 948 P2d at 414 n1 (implied contract); *Southwest Gas Corp. v. Vargas*, 901 P2d 693 (Nev 1995) (ambiguous employee manual resulted in requirement of cause); *Thompson*, 610 NW2d 53 (express agreement controlled); *Baldwin v. Sisters of Providence, Inc.*, 769 P2d 298 (Wash 1989) (employee manual required cause).

4. Cam Wal cites both federal and state cases. *See Logan*, 72 F3d 1017; *Almada*, 153 FSupp2d 1108; *Maietta*, 749 FSupp 1344; *Chrvala*, 14 FSupp2d 1013; *Vargas*, 901 P2d 693; *Thompson*, 610 NW2d at 57; *Baldwin*, 769 P2d 298. In a number of jurisdictions, juries decide whether there was a factual

(continued . . .)

with employees who denied that "cause" existed to justify termination because they denied the acts alleged to establish cause.[5]  Here, whether "cause" existed was only part of Vetter's claim.  Although he denied drinking during working hours on the company premises, he also claimed that Cam Wal acted arbitrarily and unfairly in breach of the collective bargaining agreement when it fired him for conduct previously tolerated without consequence.

[¶22.]        Cam Wal had agreed to more than good cause.  It had also agreed to restrict its right to discharge an employee for good cause by promising not to do so arbitrarily or unfairly.  For this reason, the last sentence in Cam Wal's proposed instruction 16 is especially problematic.  It provided:  "If you find that the defendant had reasonable grounds to believe that sufficient cause existed to justify termination of plaintiff's employment, then your verdict must be for the defendant."  In our view, this would have dispensed with part of the collective bargaining

---

(. . . continued)

> basis to support the employer's cause determination.  *See* Raymond v. Int'l Bus. Mach. Corp., 954 FSupp 744 (DVt 1997) (reasoning that Vermont law would not afford employers such deference); Stiles v. Skylark Meats, Inc., 438 NW2d 494, 497 (Neb 1989) (under the circumstances, the existence of cause was a question of fact); Witkowski v. Thomas J. Lipton, Inc., 643 A2d 546 (NJ 1994) (jury must determine if employee engaged in alleged conduct); Toussaint v. Blue Cross & Blue Shield, 292 NW2d 880, 896 (Mich 1980) ("Where the employee has secured a promise not to be discharged except for cause, he has contracted for more than the employer's promise to act in good faith or not to be unreasonable.").

5.      *See Logan*, 72 F3d 1017 (employee denied committing sexual harassment); *Almada*, 153 FSupp2d 1108 (employee denied he sexually harassed secretary); *Maietta,* 749 FSupp 1344 (employee denied falsifying reports); *Chrvala*, 14 FSupp2d 1013 (employee denied willful violation of company policy); *Vargas*, 901 P2d 693 (employee denied sexually harassing coworker);

(continued . . .)

agreement. Justifiable cause to terminate was not enough because the jury could have concluded that Vetter did drink on the premises during working hours—constituting sufficient cause to justify a termination—but that firing him after almost thirty years of service for an infraction never before punished, drinking beer bought and furnished by the company, was arbitrary or unfair.

[¶23.] Whether the good faith standard should apply in South Dakota to some employment termination decisions must await another day. We cannot impose it here when the collective bargaining agreement created a second level of consideration beyond good cause. That is how the contract was written. We are not free to vary or embellish it. *See* Fenske Media Corp. v. Banta Corp., 2004 SD 23, ¶8, 676 NW2d 390, 393.

[¶24.] In the end, we must simply decide whether the instructions given in this case were, as a whole, a full and correct statement of the law. *See First Premier Bank*, 2004 SD 92, ¶41, 686 NW2d at 448 (citation omitted). We conclude that the circuit court properly instructed the jury under the controlling terms of the collective bargaining agreement. Adding the standard from the California Supreme Court's *Cotran* decision, and especially the last sentence of proposed instruction 16, would have modified that agreement. Therefore, the circuit court did not err when it refused to give the proposed instruction.

[¶25.] Affirmed.

---

(. . . continued)

*Thompson*, 610 NW2d 53 (employee claimed his actions were not dishonest); *Baldwin*, 769 P2d 298 (employee denied sexually harassing patient).

#23684

[¶26.]     GILBERTSON, Chief Justice, and ZINTER and MEIERHENRY,

Justices, and MILLER, Retired Justice, concur.

[¶27.]     MILLER, Retired Justice, sitting for SABERS, Justice, disqualified.

-14-