[No. 54771-8. En Banc. March 2, 1989.]

TIMOTHY BALDWIN, *Respondent,* v. SISTERS OF PROVIDENCE IN WASHINGTON, INC., ET AL, *Appellants.*

---

[9]*See* RCW 39.24.020.

*Bogle & Gates, Delbert D. Miller,* and *Michael P. Mirande,* for appellants.

*Douglas P. Wyckoff* and *Swanson, Parr, Cordes, Young-love, Peeples & Wyckoff, P.S.,* for respondent.

[As amended by order of the Supreme Court March 30, 1989.]

DOLLIVER, J.—Defendants Sisters of Providence in Washington, Inc., St. Peter Hospital, and several hospital administrators seek review from a trial judgment in a wrongful termination suit in favor of plaintiff Timothy Baldwin.

The Sisters of Providence operate St. Peter Hospital in Olympia. In 1981, plaintiff became employed at St. Peter as a respiratory therapist. Under the terms of the employee manual, St. Peter may discharge its employees for "just cause", which is defined as "any gross violation of conduct . . ." The manual also provides a 4-step grievance procedure for resolving employee complaints. Under the procedure, the grievance first goes to the employee's supervisor, the department head, the personnel director, and finally to the hospital administrator.

On January 30, 1985, a female patient reported she had been sexually molested on January 29. The assailant was described as a fairly tall man having a long beard, long dark hair pulled back in a ponytail, and wearing a blue jacket. The nursing supervisor thought the assailant may have been the plaintiff because the description matched and because he was the only respiratory therapist on duty at the time of the incident. Respiratory therapists are the only employees who wear blue jackets. The supervisor reported this to the director of respiratory therapy, the codirectors of nursing services, and the patient's physician. When plaintiff arrived for work on January 30, he was told there was a problem involving him, and he was not to work that evening, although he would be paid for the shift. The next morning, the director of respiratory therapy informed his supervisor of the complaint. An investigative team of administrators was organized. The team was comprised of the two codirectors of nursing services, the director of personnel, and Darrell Stewart, an assistant to the hospital administrator.

On February 1, a meeting was held at which plaintiff was informed of the complaint and the investigation. An investigation ensued in which hospital records, including the female patient's medical history, and security records were reviewed and hospital personnel were interviewed. On February 22, plaintiff was fired.

On March 18, 1985, plaintiff filed suit alleging, among other theories, breach of an implied covenant that his discharge would be based upon just cause. The trial court denied a defense motion for summary judgment and for a directed verdict based upon plaintiff's failure to exhaust the grievance procedure.

Both parties submitted proposed jury instructions as to the applicable law on the breach of contract theory. Defendants proposed two instructions. One instruction proposed by defendants defined just cause as a good faith, fair and honest reason supported by substantial evidence. Another proposed instruction was similar, but added the objective requirement that the just cause determination be reasonable. The trial court declined to give either instruction and drafted its own instruction which reads in pertinent part as follows:

You are instructed that St. Peter Hospital had the right to terminate the plaintiff, for any reason, at any time, unless the plaintiff can prove that St. Peter Hospital had created an atmosphere of job security and fair treatment with promises, found in employment manuals or policies, of specific treatment in specific situations whereby plaintiff was induced thereby to remain on the job and not actively seek other employment.

If you find plaintiff has sustained his burden of proof, then plaintiff's employment could only be terminated for just cause and the burden of proof shifts to defendant to prove by a preponderance of the evidence that on February 22, 1985, plaintiff was terminated from his employment for just cause.

"Just cause" means that under the facts and circumstances existing at the time the decision is made, an employer had a good, substantial and legitimate business

reason for terminating the employment of a particular employee.

In closing argument, plaintiff's attorney relied heavily on this instruction. The jury, in answer to special interrogatories, found (1) plaintiff was excused from resorting to the grievance procedure because it would be futile, (2) the employment contract contained a requirement that discharge would be based upon just cause, and (3) the hospital did not have just cause in discharging plaintiff.

The trial court denied a defense motion for judgment notwithstanding the verdict and entered judgment in favor of plaintiff. The defendants appealed directly to this court.

I

■ Generally, contractual grievance procedures must be exhausted before parties resort to the courts. *Tombs v. Northwest Airlines, Inc.,* 83 Wn.2d 157, 162, 516 P.2d 1028 (1973); *Lew v. Seattle Sch. Dist. 1,* 47 Wn. App. 575, 577, 736 P.2d 690 (1987). There are exceptions to the exhaustion doctrine based upon considerations of fairness or practicality. *See South Hollywood Hills Citizens Ass'n v. King Cy.,* 101 Wn.2d 68, 74, 677 P.2d 114 (1984). One such exception is recognized where pursuing the available remedies would be futile. *Moran v. Stowell,* 45 Wn. App. 70, 77, 724 P.2d 396, *review denied,* 107 Wn.2d 1014 (1986). Generally, futility addresses a showing of bias or prejudice on the part of discretionary decisionmakers. *See Orion Corp. v. State,* 103 Wn.2d 441, 458, 693 P.2d 1369 (1985).

The Superior Court denied defense motions for summary judgment and directed verdict based upon plaintiff's failure to show the futility of exhausting the contractual grievance remedies. Defendants do not challenge that the first three steps of the grievance process were futile as plaintiff's supervisor, department head, and the personnel director were actively engaged in the investigation. They do challenge plaintiff's failure to pursue the fourth step and take the grievance to the hospital administrator.

■ First, defendants contend the Superior Court misplaced the burden of proof on summary judgment. On a motion for summary judgment, the moving party has the burden of showing there is no genuine issue of material fact, but this does not relieve the nonmoving party of the burden of producing evidence that would support a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 359, 753 P.2d 517 (1988). The nonmoving party must set forth specific facts showing a genuine issue and cannot rest on mere allegations. *Anderson,* at 256; *Grimwood,* at 359–60. In denying the defense motion, the Superior Court stated:

> On this record, the defendants have not carried their burden of showing that there are no issues of fact with respect to the possible futility of plaintiff's efforts to exhaust contractual remedies.

Defendants do not point to any specific pleadings, affidavits, or depositions showing the absence of evidence on the issue of futility. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); *Seven Gables Corp. v. MGM/UA Entertainment Co.,* 106 Wn.2d 1, 12–13, 721 P.2d 1 (1986). Therefore, the Superior Court was correct in its determination that defendants did not meet their initial burden of showing there were no issues of fact regarding futility.

■ Defendants further contend the Superior Court erred in not directing a verdict in defendants' favor on the issue of futility. In considering a motion for a directed verdict, the court must view the evidence in the light most favorable to the nonmoving party, and the denial of the motion should be reversed only if no evidence or reasonable inference exists which would be sufficient to sustain a verdict for the nonmoving party. *Cherberg v. Peoples Nat'l Bank,* 88 Wn.2d 595, 606, 564 P.2d 1137 (1977). In the plaintiff's case in chief, plaintiff testified he felt taking his grievance to the hospital administrator would be futile

because the assistant administrator was involved in the investigation as a representative of the administrator. The record shows the assistant was regularly delegated duties by the administrator, although there is no allegation the assistant was actually pursuing the investigation on behalf of the administrator. Plaintiff does not allege the hospital administrator was personally involved in the investigation or had predetermined the case. On this testimony, defendants made a motion for a directed verdict. The trial court denied the motion because there was an inference of bias based upon the involvement of the assistant administrator in the investigation.

Defendants cite one case where the subjective belief the available procedures would be futile was not sufficient to invoke the exception. *See Smith v. General Elec. Co.*, 63 Wn.2d 624, 625–27, 388 P.2d 550 (1964). The principle that a subjective belief of futility is sufficient to invoke the exception would conflict with the strong bias toward requiring exhaustion in Washington. However, aside from plaintiff's subjective belief, the evidence also indicates (1) a close working relationship between the administrator and the assistant administrator, (2) a situation where the first three persons in the grievance process were actively involved in the decision to fire plaintiff, and (3) a particularly inflammatory and sensitive incident which resulted in plaintiff's termination. Viewing this evidence and the reasonable inferences therefrom in the light most favorable to plaintiff, a genuine issue of bias appears to be raised. Therefore, the Superior Court was correct in denying the defense motion for a directed verdict.

## II

The defendants assert the trial court erred in placing the burden of persuasion on defendants to prove plaintiff was dismissed for just cause. We concur; the instruction is in error.

The allocation of the burdens of persuasion and production in breach of employment contract cases is one of first

134

impression in Washington. Defendants rely in large part on *Thompson v. St. Regis Paper Co.,* 102 Wn.2d 219, 685 P.2d 1081 (1984) to support the position that the burden of persuasion is at all times with the employee. *Thompson* modified the common law at will doctrine to provide protection for employees (1) who rely on employer promises of specific treatment in employee manuals and (2) who are discharged for reasons contravening public policy. However, the Thompson court did not reach the issue of allocation of burdens of persuasion and production as to the first exception, and the court's language was ambiguous regarding the allocation of burdens as to the second exception. The court stated:

> The employee has the burden of proving his dismissal violates a clear mandate of public policy. Thus, to state a cause of action, the employee must plead and prove that a stated public policy, either legislatively or judicially recognized, may have been contravened . . . However, once the employee has demonstrated that his discharge may have been motivated by reasons that contravene a clear mandate of public policy, the burden shifts to the employer to prove that the dismissal was for reasons other than those alleged by the employee.

*Thompson,* at 232–33. It is not clear whether the burden of production or persuasion shifts to the employer.

In statutory employment discrimination actions, the employee initially must show a prima facie case of discrimination after which the burden of production shifts to the employer to show a legal excuse exists for the termination, but the burden of persuasion remains at all times with the employee. *See, e.g., Texas Dep't of Comm'ty Affairs v. Burdine,* 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981); *Grimwood v. University of Puget Sound, Inc., supra; Hollingsworth v. Washington Mut. Sav. Bank,* 37 Wn. App. 386, 681 P.2d 845, *review denied,* 103 Wn.2d 1007 (1984). It would be "counterintuitive" to place a lighter burden on employers faced with wrongful termination claims than on employers charged with violating statutory discrimination laws. *Duke v. Pfizer, Inc.,* 668 F. Supp.

1031, 1040 (E.D. Mich. 1987). Some jurisdictions have adopted the allocation of burdens in employment discrimination cases for wrongful termination actions. *See Duke v. Pfizer, Inc., supra; Schmidly v. Perry Motor Freight, Inc.,* 735 F.2d 1086 (8th Cir. 1984); *Crosier v. United Parcel Serv., Inc.,* 150 Cal. App. 3d 1132, 198 Cal. Rptr. 361 (1983); *Pugh v. See's Candies, Inc.,* 116 Cal. App. 3d 311, 171 Cal. Rptr. 917 (1981).

This allocation of burdens comports with general burden of proof rules requiring the plaintiff to prove all elements of the cause of action. *See Western Wash. Laborers–Employers Health & Sec. Trust Fund v. Merlino,* 29 Wn. App. 251, 255, 627 P.2d 1346 (1981); *People's Mortgage Co. v. Vista View Builders,* 6 Wn. App. 744, 747, 496 P.2d 354 (1972).

Baldwin relies on cases from other jurisdictions to support the contention the burden of persuasion rests with the employer to show a proper excuse for the discharge. *See, e.g., Bosche v. Lear Petroleum Exploration, Inc.,* 816 F.2d 1460 (10th Cir. 1987); *Phipps v. Clark Oil & Ref. Corp.,* 396 N.W.2d 588 (Minn. Ct. App. 1986), *aff'd,* 408 N.W.2d 569 (Minn. 1987); *Patton v. J.C. Penney Co.,* 75 Or. App. 638, 707 P.2d 1256 (1985), *rev'd on other grounds,* 301 Or. 117, 719 P.2d 854 (1986); *Advance Ross Elecs. Corp. v. Green,* 624 S.W.2d 316 (Tex. Ct. App. 1981), *cert. denied,* 458 U.S. 1108 (1982); *Howell v. Kelly,* 534 S.W.2d 737 (Tex. Civ. App. 1976).

We do not believe employers should face a greater burden in breach of contract claims than they face in discrimination actions especially in light of the greater protections the law attempts to provide alleged victims of discrimination. *Duke v. Pfizer, Inc., supra* at 1040. Placing the burden of persuasion on the party asserting breach will tend to maintain the balance between the employer's interest in running its business and the employee's interest in continued employment sought to be achieved by *Thompson. Thompson v. St. Regis Paper Co., supra* at 227. The shift of the burden to the employer to prove just cause could

encourage employers to remove all such language from handbooks to retain effective control of the workplace. *Thompson,* at 229. While as an evidentiary matter, the employer bears the burden of production to avoid a directed verdict in the employee's favor, the ultimate burden of persuasion rests with the employee.

This is consistent with the allocation of burdens in statutory discrimination cases. Furthermore, a court rule on the allocation of burdens would alleviate any practical problems in formulating understandable jury instructions when, as is often the case, statutory and common law claims are raised in the same suit. Thus, for common law termination claims, we adopt the rule we set forth in *Grimwood v. University of Puget Sound, Inc.,* 110 Wn.2d 355, 753 P.2d 517 (1988) for statutory termination claims:

> Once a plaintiff has made out a prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for termination. The employer's burden at this stage is not one of persuasion, but rather a burden of production. To go forward, the employer need only articulate reasons sufficient to meet the prima facie case. . . . Once the employer fulfills his burden of production, to create a genuine issue of material fact the plaintiff must satisfy his ultimate burden of persuasion and show that the employer's articulated reasons are a mere pretext for what, in fact, is a discriminatory purpose.

*Grimwood,* at 363–64.

### III

Defendants contend the Superior Court erred in instructing the jury on the standard for reviewing the employer's determination of just cause. The Superior Court's instruction was as follows:

> "Just cause" means that under the facts and circumstances existing at the time the decision is made, an employer had a good, substantial and legitimate business reason for terminating the employment of a particular employee.

Defendants contend this instruction was in error because it allowed the jury to make an independent assessment of just

cause. Defendants' proposed instruction incorporates both a subjective and objective standard to review the employer's just cause determination. The proposed instruction reads as follows:

"Just cause" is defined as a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power. A discharge for "just cause" is one based on facts that (1) are supported by substantial evidence and (2) are reasonably believed by the employer to be true and also (3) is not for any arbitrary, capricious, or illegal reason.

The Superior Court rejected this instruction because it felt any reference to "good faith" was inconsistent with this court's rejection in *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984) of implying good faith into every employment contract. There is, however, no inconsistency in rejecting an implied covenant of good faith as part of every employment contract and allowing good faith to serve as part of the standard to review whether a term placed into a contract by the employer was breached.

As the Oregon Supreme Court has noted, two issues arise when dealing with a just cause provision, "(1) what is the meaning of just cause; and (2) who makes the requisite factual determination." *Simpson v. Western Graphics Corp.*, 293 Or. 96, 100, 643 P.2d 1276 (1982). In this case, the parties agree sexual abuse of a patient is just cause for termination. An instruction was given to this effect. Therefore, the only issue is who makes the requisite factual determination of just cause. This question has not been decided by this court.

In addressing this issue the Oregon Supreme Court stated:

[T]here is a just cause provision, but no express provision transferring authority to make factual determinations from the employer to another arbiter. Neither is there reason to infer that such a meaning was intended by the terms of the Employee Handbook. . . . [The handbook] is a unilateral statement by the employer of self–imposed limitations upon its prerogatives. . . . [T]he meaning

intended by the drafter, the employer, is controlling and there is no reason to infer that the employer intended to surrender its power to determine whether facts constituting cause for termination exist. . . . In the absence of any evidence of express or implied agreement whereby the employer contracted away its fact–finding prerogative to some other arbiter, we shall not infer it.

*Simpson,* at 100–01. In *Thompson* we posited a similar position in rejecting a good faith and fair dealing exception to the at–will doctrine.

[W]hile an employer may agree to restrict or limit his right to discharge an employee, to imply such a restriction on that right from the existence of a contractual right, which, by its terms has no restrictions, is internally inconsistent.

*Thompson,* at 228. Similarly, an employer's agreement to restrict discharges to those supported by just cause should not be followed by a further judicial implication which takes the determination of just cause away from the employer. *Cf. Brady v. Daily World,* 105 Wn.2d 770, 776, 718 P.2d 785 (1986) (question of fact whether employer had sufficient evidence to support dismissal due to intoxication).

Plaintiff argues defendants' reliance on *Simpson* is misplaced due to a later Oregon case, *Fleming v. Kids & Kin Head Start,* 71 Or. App. 718, 693 P.2d 1363 (1985). However, *Fleming* dealt with the meaning of just cause, not with who makes the factual determination. *Fleming,* at 721. Additionally, *Simpson* has subsequently been endorsed. *See Frazier v. Minnesota Mining & Mfg. Co.,* 82 Or. App. 328, 331, 728 P.2d 87 (1986), *review denied,* 303 Or. 74, 734 P.2d 354 (1987).

The reasoning of the Oregon Supreme Court is persuasive. The employer unilaterally decided to place the restriction of just cause upon its termination decisions. This just cause provision, by its terms, had no restrictions. However, the employer should not be allowed to make arbitrary determinations of just cause. The balance sought to be achieved in *Thompson* would conflict with such a view, and

defendants do not argue this position. As defendants argue, a standard which checks the subjective good faith of the employer with an objective reasonable belief standard strikes a balance between the employer's interest in making needed personnel decisions and the employee's interest in continued employment. *See Thompson,* at 232. A contrary result could encourage employers to remove such provisions from their handbooks and render the inroads made by *Thompson* ineffectual.

■ We hold "just cause" is a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power. We further hold a discharge for "just cause" is one which is not for any arbitrary, capricious, or illegal reason and which is based on facts (1) supported by substantial evidence and (2) reasonably believed by the employer to be true. The instruction of the trial court was in error.

Plaintiff sets great store in the argument that under either the trial court's instruction or the proposed instruction "just cause" would not have been found by the jury. While this may be so, it is highly speculative. Furthermore, whatever the jury does, it ought to do under proper instructions. They were not given in this case.

Reversed.

CALLOW, C.J., and UTTER, DORE, PEARSON, DURHAM, and SMITH, JJ., concur.

BRACHTENBACH and ANDERSEN, JJ., concur in the result.