IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KEVIN ANDERSON, | ) | |
| | ) | No. 31568-1-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SPOKANE POLICE DEPARTMENT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

FEARING, J. — Inmate Kevin Anderson sues the Spokane Police Department

(SPD) claiming it failed to comply with Washington's Public Records Act (PRA). He

seeks statutory penalties and costs. To recover the penalty for violations of the PRA,

inmates must show the agency acted in bad faith. Contending Anderson failed to allege

bad faith, SPD moved to dismiss or in the alternative for summary judgment, which the

court granted. We affirm.

FACTS

The Spokane Police Department Records Division is the division within the SPD

assigned to respond to Public Records Act requests. The division operates like an

assembly line. Many employees perform discrete tasks towards completion of public

record disclosure requests.

The Spokane Police Department Records Division is a multi-jurisdictional division that provides all records management services for the City of Spokane Police Department, the Spokane County Sheriff's Office, and the City of Spokane Valley Police Department and some services for the Spokane International Airport Police, Liberty Lake Police Department, and Airway Heights Police Department. The records division serves approximately 447,000 Spokane County citizens. The records division operates 24 hours per day, 7 days per week, and 365 days per year. The division does not observe holidays.

The SPD Records Division performs many functions in addition to responding to Public Records Act requests. The records division enters incident reports, warrants, protection orders, missing person reports, and rescission orders into the Washington Criminal Information Center and the Federal Bureau of Investigation's (FBI) National Criminal Information Center systems; performs background checks for law enforcement candidates for hire; processes concealed weapon permits, gun sale approvals, criminal histories, juvenile records, jail records, driver and motor vehicle records, autopsy records, and postmortem records; responds to phone teletype and facsimile requests from law enforcement; all in addition to providing an average of 10,000 pages per month in response to Public Records Act requests. Responding to Public Records Act requests comprises only 4.45 percent of its work volume.

In January 2013, the division had 1,730 pending requests. To handle these

requests, the SPD Records Division maintains three seasoned employees trained in public disclosure and three employees being trained in public disclosure. Each employee performs this function as one of his or her two work group areas. The division estimates that it has three full-time employee equivalents dedicated to public disclosure at this time. The records division prepares monthly production reports. It performs time-trial studies on each of its tasks in order to establish standards of performance. Processing a request takes an average of 120 days now.

The SPD Records Division is understaffed due to budget cuts. In 2006, Records Director Theresa Giannetto was authorized to hire and train 5 new staff members that increased the division's staffing level to 31 positions. At that staffing level, the records division erased its backlog for Public Records Act requests. Eighty percent of public requests were then immediately completed for the requestor at the public window. The division completed more difficult requests within two weeks from the date of request.

By 2010, budget constraints reduced the number of positions in the SPD Records Division by 3 to a total of 28 approved positions. The records division suffers from extreme turnover more than three times that of all other city positions, because of an employee's undesirable work hours, compensation, and conditions. Consequently the records division operates with 3 to 6 vacant positions continually. To be proficient, a records division records specialist requires a year of training.

Kevin Anderson, an inmate at Coyote Ridge Corrections Center, sent two public records requests to the SPD. The first request appeared in a February 24, 2012, letter in which Anderson requested a police report identified by a ticket number. Like all requests it receives, the records division stamped the letter received on February 29. The records division treated Kevin Anderson's requests no different from a request sent by someone not confined in jail. On Leap Day, February 29, 2012, the records division also entered Anderson's name and the requested ticket number into its public records disclosure log.

On March 4, the records division responded to Kevin Anderson's first request with a letter explaining it could not search its database by ticket number, since the numbers are associated with a court and refer to information SPD lacks. To fulfill the records request, the records division asked Anderson for additional information, such as: the date, time, and location of the incident; the names of individuals involved; and a police report number.

In a March 6 letter, Kevin Anderson provided the records division with his full name, date of birth, and the location of the incident. The records division stamped the letter received March 8, and entered Anderson's name and the police report number into its public records disclosure log. On March 8, the records division acknowledged receipt of Anderson's records request and informed him it needed approximately 90 business days to screen the requested information pursuant to chapters 10.97, 42.56, 46.52, and

4

13.50 RCW, respectively the Criminal Records Privacy Act, the Public Records Act, and statutes regarding the confidentiality of police reports and the release of juvenile records.

In a March 13 letter, Kevin Anderson requested the records division expedite his request for records based on its simplicity. The records division stamped the March 13 letter as received on March 16 and entered Anderson's name and the police report number previously identified into its public records disclosure log. In a March 17 letter to Anderson, the records division explained it needed 90 business days to respond to his request because the records division handled all requests on a first come first serve basis and budget cuts reduced staffing levels. The records division refused to expedite the request.

Although Kevin Anderson considered 90 days unreasonable, the records division handles public records requests on a first come first serve basis, and the division can face a backlog of upwards of two thousand requests at any given time. The SPD records division follows exceptions to the first come first serve policy, such as when public records requests are followed by subpoenas duces tecum by attorneys with court dates requiring quicker action. In general, however, most requestors want a request expedited and expedition is not granted because of the volume of public records requests.

Other factors may affect the SPD record division's handling of a Public Records Act request. Many requests require screening under chapters 10.97, 13.50, 42.56, and

46.52 RCW. The screening checks for information that must be redacted under state law, such as crime victim information and personal identifiers such as home addresses, telephone numbers, and Social Security numbers. Other requests are extensive and require special handling. Because the records division provides an estimate of time before performing the actual search for the records, the estimate may not be precise or accurate. According to SPD Records Director Theresa Giannetto, the records division issues estimates in good faith based upon the number of other pending public records requests as well as the availability of staff and special handling required for each request.

In his request to expedite, Kevin Anderson asserted he requested a report of no more than two pages. He asked whether this request could be expedited based on the simplicity of the request. Using the additional information Anderson provided, the records division later identified a police report number associated with 23 pages of records. Rather than the records division employees initially ascertaining the precise pages associated with a request for an incident report, the records division provides all documents associated with an incident report that have been uploaded to the records imaging system. This policy prevents different interpretations of what constitutes a "record" or "police report" and conflicting viewpoints regarding which documents belong to an incident report number. Clerk's Papers (CP) at 234. Records division clerks lack discretion in what they release, so that the requestor receives all records associated with

the incident. Kevin Anderson's first public records request covered a domestic violence no contact order and subsequent amended no contact orders associated with his incident report number. The request also entailed retrieving information from the Washington Criminal Information Center and National Information Criminal Center databases added by the court following court action on a case.

In addition to sending the request to expedite production on March 13, Kevin Anderson mailed a second request for records to the records division, on the same day. This request sought SPD's Public Records Act policies, all records reflecting the number of requests submitted to the police department since January 1, 2012, all records showing the responses to such requests, all records showing the number of requests fulfilled since January 1, 2012, all records that show the different criteria that may be used in searching for a police report, and all records showing the work hours for the records division. The records division stamped the letter received March 25. On March 25, the records division also entered Anderson's name and the record policy he requested into its public records disclosure log.

SPD's Records Division mistakenly stamped the March 13 request as received March 25, since the records division actually received the letter on March 21. A note, written from SPD Records Director Theresa Giannetto to her staff, previously appended to Kevin Anderson's March 21 letter, reads:

> Please send the 5 day letter
> 49 pages—
>         You may ask for 10% deposit
> all records are attached here.
> No redactions necessary
>                 Theresa
>                 3/21/12

CP at 127. The last entry in the note confirms the date of receipt to be March 21.

Giannetto failed to stamp the request when she received it and her staff likely recognized

her oversight when preparing to reply to Anderson and when stamping the request

received on March 25. The records division appliance that stamps requests as received

cannot be adjusted for date and time.

On March 25, the records division sent Kevin Anderson two letters. The first

letter acknowledged receipt of Anderson's March 13 request and informed him it needed

approximately 90 business days to fill his request because it was extensive and required

special handling. In the second letter, the records division responded to Anderson's

records request of "03/16/2012" and requested Anderson provide a deposit for the

request. CP at 129. Anderson's two requests were dated February 24 and March 13,

2012. March 16 is the date upon which the records division received Kevin Anderson's

request to expedite processing of his first request for records.

On April 25, SPD's Records Division notified Kevin Anderson by mail that it

closed his public record disclosure request of "03/25/2012" because he failed to pay the

deposit within 30 days. CP at 133. After the records division closed Anderson's second request, Anderson tendered a down payment of sixty cents by letter dated April 19, 2012. In a note to her staff on May 2, SPD Records Director Theresa Giannetto acknowledged receiving Anderson's deposit. In the note, Giannetto instructed her staff,

> Even though this [Anderson's deposit] is late[, p]lease send [the] fee due letter for what is owed . . . . When we receive the [payment] we'll send the documents.

CP at 135.

On May 3, the records division notified Anderson by mail that he could retrieve the documents sought in his second request for $6.75 or have them mailed to him for $9.02. Anderson did not pay for the records or respond to the records division's notification, so it never provided them.

On June 4, the records division informed Kevin Anderson by mail that the records requested by his first request could be retrieved or mailed as soon as he paid for them. The records division, also on June 4, sent a form letter to Anderson, which declared:

> Enclosed is a copy of the public record(s) you requested. We have released the portions of the record(s) which are not exempt from disclosure by RCW 42.56.210 and/or other statutes. Information redacted or withheld are exempt from public disclosure for the follow reason(s).

CP at 98. The records division checked two of eight boxes on the form letter, indicating that portions of the records he sought were redacted from disclosure because of the need for effective law enforcement and infringement upon a person's right to privacy.

9

Contrary to language in the June 4 letter, the records division never provided the first

requested records to Anderson because he never paid for them.

PROCEDURE

On June 12, 2012, Kevin Anderson filed a complaint against SPD for violating the

Public Records Act. We assume that SPD is not a distinct legal entity and that the city of

Spokane is the real defendant in interest. Anderson alleged SPD violated the PRA by (1)

failing to respond to a request for records within the statutorily prescribed five business

days, (2) providing an unreasonable estimate of time to fulfill a request for disclosure, (3)

failing to provide the agency's fullest assistance, and (4) operating in bad faith when it

mailed a letter explaining how it prioritizes records requests. For these violations,

Anderson requested a daily penalty and statutory fees and costs.

In its answer to the complaint, SPD denied it violated the PRA or that any

violation was committed in bad faith. In its initial answer SPD alleged it received and

replied to Anderson's second record request on March 25, though it acknowledged his

letter was dated March 13. SPD later amended its answer to reflect what it learned

through discovery—that it received Anderson's second record request on March 21.

Kevin Anderson then accused SPD's record division of falsification of records because of

the discrepancy in the date that the department received the second request.

SPD moved to dismiss Kevin Anderson's complaint under CR 12(b) and (c), or, in

10

the alternative, for summary judgment. SPD Records Director Theresa Giannetto signed a declaration in support of the motion. Giannetto averred that neither she nor her staff intended to change or alter any facts. As evidence of good faith, Giannetto observed that staff timely responded to Anderson's second request regardless of whether the records division received the letter on March 21 or March 25, 2012. Anderson filed a cross motion for partial summary judgment and a motion to strike Giannetto's declaration and SPD's amended answer.

SPD replied to Kevin Anderson's cross motion and asserted that it did not amend its answer to add any new claims, parties, or defenses. Instead it corrected an undisputed fact learned through discovery and long known to the parties—that the records division received Anderson's second request on March 21 not March 25. SPD also opposed Anderson's motion to strike Theresa Giannetto's affidavit. SPD argued Anderson provided no basis to exclude Giannetto's testimony and failed to present any evidence contradicting her testimony.

In his pleadings, Kevin Anderson emphasized that the records division's reference to March 16, in its March 25 letter, must refer to the date that it received his second request. Therefore, according to Anderson, the March 25 initial letter was untimely. SPD characterized the March 16 reference as a typo.

The trial court granted SPD's "Motion to Dismiss / Summary Judgment." CP at

11

428. The court ruled that Anderson, a jail inmate, did not show SPD acted in bad faith or denied him the opportunity to inspect or copy a public record. The trial court denied Kevin Anderson's cross motion for partial summary judgment. The trial court's ruling did not distinguish between SPD's summary judgment motion and motion to dismiss nor list the pleadings, upon which the court relied.

## LAW AND ANALYSIS

Kevin Anderson claims the trial court committed substantive error and at least two procedural errors when it dismissed his suit for violations of Washington's Public Records Act. First, Anderson contends the trial court procedurally erred by relying on the inadmissible declaration of Theresa Giannetto. Second, Anderson argues the court's consideration of Giannetto's declaration converted SPD's motion to dismiss to a motion for summary judgment. Summary judgment was improper, according to Anderson, because he raised an issue of material fact. Anderson also contends the court should have granted him partial summary judgment.

We do not know if the trial court relied upon declarations when granting judgment for SPD, and we do not know if the trial court intended to grant a motion to dismiss or summary judgment. Since Kevin Anderson alleged SPD acted in bad faith, a new prerequisite for a successful Public Records Act suit by a jail inmate, we conclude that Anderson's complaint was sufficient to survive a motion to dismiss. We consider the

12

appeal to be based upon the granting of summary judgment to SPD. We affirm the summary judgment dismissal, because Anderson fails to create an issue of fact as to bad faith.

### *Giannetto's Declaration*

Kevin Anderson assigns error to the trial court's denial of his motion to strike the declaration of Theresa Giannetto. The trial court did not expressly deny the motion and we do not know if the court considered the declaration when granting SPD judgment. We refuse to review Anderson's assignment of error, however, because he presents no argument in his brief supporting the motion to strike the declaration. He cites no authority in support of the assignment.

This court does not review errors alleged but not argued, briefed, or supported with citation to authority. RAP 10.3; *Valente v. Bailey*, 74 Wn.2d 857, 447 P.2d 589 (1968); *Meeks v. Meeks*, 61 Wn.2d 697, 379 P.2d 982 (1963); *Avellaneda v. State*, 167 Wn. App. 474, 485, 273 P.3d 477 (2012). Appellate courts are precluded from considering such alleged errors. *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 690, 974 P.2d 836 (1999); *Escude v. King County Pub. Hosp. Dist. No. 2*, 117 Wn. App. 183, 190 n.4, 69 P.3d 895 (2003).

On appeal, Anderson complains that the trial court improperly relied on Theresa Giannetto's declaration to the extent it explained why 90 days is a reasonable time for a

13

response to a PRA request. Giannetto is the records director for SPD's records division

and, in her declaration, she described at length and with specificity her personal

knowledge as to the time needed for SPD to respond to records requests. Thus, to the

extent the trial court relied on Giannetto's declaration, the trial court committed no error.

*Summary Judgment Dismissal of Public Records Act Claim*

Kevin Anderson contends the trial court erred in granting SPD summary judgment

because a material fact existed as to when SPD's record division received his letter

requesting records, dated March 13, 2012. He also contends the trial court erred in

granting SPD summary judgment because there is a question of fact as to whether

exemptions claimed by SPD are proper. He argues that, conversely, he should have been

granted summary judgment. We hold that summary judgment was proper because

Anderson lacked sufficient evidence to support the prima facie elements of his case. He

failed to present evidence that SPD asserted exemptions and untimely responded in bad

faith. Theresa Giannetto's declaration provided an evidentiary basis to establish good

faith on behalf of SPD and Anderson provided no countering admissible evidence.

Appellate courts review a trial court's order granting summary judgment de novo.

*Briggs v. Nova Servs.*, 166 Wn.2d 794, 801, 213 P.3d 910 (2009). Summary judgment is

appropriate if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c). A material fact is one upon which the outcome of the litigation depends in whole or in part. *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974). In a summary judgment motion, the burden is on the moving party to demonstrate that there is no genuine issue as to a material fact and that, as a matter of law, summary judgment is proper. *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985). If the moving party satisfies its burden, the nonmoving party must present evidence that demonstrates that material facts are in dispute. *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 132, 769 P.2d 298 (1989). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case, then the trial court should grant the motion. *Hines v. Data Line Sys., Inc.*, 114 Wn.2d 127, 148, 787 P.2d 8 (1990).

To make a sufficient showing, Anderson must set forth specific facts showing a genuine issue. *Baldwin*, 112 Wn.2d at 132. Anderson may not rely on speculation, argumentative assertions that unresolved factual issues remain, or having his affidavits considered at face value. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). To survive summary judgment, Anderson must provide sufficient, competent evidence to establish the essential elements of his case or, at the very least, a genuine issue of material fact as to those elements. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

The Public Records Act requires a government entity to "promptly" respond to a citizen's records request. RCW 42.56.520 reads:

> Responses to requests for public records shall be made promptly by agencies . . . . Within five business days of receiving a public record request, an agency . . . must respond by either (1) providing the record; (2) providing an internet address and link on the agency's web site to the specific records requested . . . ; (3) acknowledging that the agency . . . has received the request and providing a reasonable estimate of the time the agency . . . will require to respond to the request; or (4) denying the public record request. Additional time required to respond to a request may be based upon the need to clarify the intent of the request, to locate and assemble the information requested, to notify third persons or agencies affected by the request, or to determine whether any of the information requested is exempt and that a denial should be made as to all or part of the request. In acknowledging receipt of a public record request that is unclear, an agency. . . may ask the requestor to clarify what information the requestor is seeking. . . . Denials of requests must be accompanied by a written statement of the specific reasons therefor.

The PRA permits a party to recover costs, attorney fees, and a per day penalty if he or she prevails against an agency in any action seeking the right to inspect or copy any public record or receive a response to the public record within a reasonable amount of time. RCW 42.56.550(4). We do not address whether Kevin Anderson may recover any costs or penalty when he failed to pay the processing costs of SPD, since we can resolve the appeal on other grounds.

In 2011, the state legislature, in response to mounting Public Records Act requests from jail inmates, amended the Public Records Act to deny relief to an inmate unless he or she proves bad faith. The amendment, codified at RCW 42.56.565(1), reads:

16

> A court shall not award penalties under RCW 42.56.550(4) to a person who was serving a criminal sentence in a state, local, or privately operated correctional facility on the date the request for public records was made, unless the court finds that the agency acted in bad faith in denying the person the opportunity to inspect or copy a public record.

Anderson made this claim while he was an inmate in a state correctional facility. He does not challenge the constitutionality of the amendment and so we address whether there is a question of fact as to the good faith of SPD.

RCW 42.56.520 demands a municipality respond to a request for records within five days, regardless of whether the records are produced. If the records are not produced within the five days, the municipality must explain, in its response, why and give a reasonable estimate of the time needed to produce the records, assuming production is anticipated. Kevin Anderson initially argues that the records division did not send a letter within five days of his second records request. Anderson highlights that the records division referred to receiving the request on March 16, in its March 25 responsive letter. Therefore, according to Anderson, the March 25 initial letter was sent nine days after receipt of his request and untimely. SPD characterized the March 16 reference as a typo.

Contrary to Kevin Anderson's argument, the records division's responsive letter of March 25 does not aver it received the second records request on March 16. Instead the March 25 letter states that Anderson sent his request on March 16. Thus, the March 25 letter necessarily had a mistake. Theresa Giannetto, in her declaration, explains the

mistake and establishes that the records division received the second request on March 21, although the records division also mistakenly earlier wrote that it received the request on March 25. Anderson presents no evidence, only conjecture, that the records division received the second records request before March 21. Therefore, we hold, as did the trial court, that the records division's response to the second request was within five days and timely.

In addition to sending the five-day letter, the records division needed to timely respond to Kevin Anderson's two record requests. In turn, Anderson needs to show any untimely response was made in bad faith. In his appeal brief, Anderson fails to even argue that the length of time taken by the records division was in bad faith. The undisputed evidence provided by Theresa Giannetto establishes that SPD's response was reasonable based upon its resources and amount of work. The evidence illustrates increasing public demands upon government employees, with a decreasing public desire to pay for the cost of the demands.

In his opening brief, Kevin Anderson devotes pages to arguing that the records division wrongly asserted exemptions under the Public Records Act. Nevertheless, Anderson does not contend that the records division asserted the exemptions in bad faith, a prerequisite to recovery. RAP 10.3(a)(4) and (5) require an appellant to separately state each error the party contends the trial court made and support such arguments with

18

authority. The purpose of the rule and related rules "is to enable the court and opposing counsel efficiently and expeditiously to review the accuracy of the factual statements made in the briefs and efficiently and expeditiously to review the relevant legal authority." *Hurlbert v. Gordon*, 64 Wn. App. 386, 400, 824 P.2d 1238 (1992). Anderson failed to mention bad faith in his opening brief, let alone provide legal authority that would support such a contention. This court is not required to construct an argument on behalf of him. *State v. Wheaton*, 121 Wn.2d 347, 365, 850 P.2d 507 (1993); *State v. Cox*, 109 Wn. App. 937, 943, 38 P.3d 371 (2002). Constructing such an argument for Anderson would prejudice SPD, who had no opportunity to respond. *Cf. Maynard v. Sisters of Providence*, 72 Wn. App. 878, 881, 866 P.2d 1272 (1994) (overlooking noncompliance with RAP 10.3 when doing so did not prejudice respondent).

In his reply brief, Anderson contends for the first time since he filed his complaint that SPD acted in bad faith in three ways other than untimely producing records. First, Anderson argues the records division's response to his first request was a lie. The records division, he contends, did not require additional information to locate the police report he requested. The records division could have identified the police report using the ticket number he supplied. Second, Anderson contends the records division's letter dated March 4, is a lie because the records division does not author business letters on Sunday. Third, Anderson contends Giannetto's declaration is knowingly false. He points

19

to two inconsistencies in the record to support his contention.

To support his contention, Kevin Anderson notes the police report references the ticket number he provided. Anderson is wrong. The fact that the police report references the ticket number Anderson provided does not demonstrate SPD has the ability to search its database of records for the ticket number. Giannetto explained why in her declaration:

> The information Plaintiff [Anderson] provided to the Records Division was insufficient because the only information he provided was a ticket number, which is a number associated with the court and not information that is in the possession of the Records Division. It is not a method by which the Records Division indexes information or by which it can search for requested information. The Records Division is not linked to the court's judicial information system. The Records Division indexes by police report number and other specific information identifying individuals, which the Plaintiff did not provide. The Defendant [Anderson] also provided a very common name without a middle initial or a date of birth and gave no information to identify the incident, such as date, time, location of incident and names of individuals involved and their birth dates.

CP at 231. As Giannetto explains, the databases the records division searches are not indexed by ticket number. This evidence, construed in the light most favorable to Anderson, does not suggest the records division acted in bad faith.

Second, Anderson contends the records division's letter dated March 4, is a lie because the records division does not author business letters on Sunday. Again, Anderson is wrong. Giannetto attested that SPD's record division is "operational 24 hours per day, seven days per week." CP at 235. Supporting her statement are the calendared schedules SPD provided in response to Anderson's discovery requests. The

20

evidence shows SPD's record division operates on Sunday. Again, Anderson fails to show SPD operated in bad faith.

Third, Anderson contends Giannetto's declaration is knowingly false. He points to two inconsistencies in the record to support his contention. Giannetto testified that Anderson never provided a deposit for his March records request. But, in an interrogatory, SPD requested and Anderson admitted that he did send a down payment for his March records request on April 19. Anderson contends Giannetto's testimony is false in a second respect. Giannetto testified the records division never provided the records Anderson requested. But, in a letter dated June 4, the records division stated "[e]nclosed is a copy of the public record(s) you requested." CP at 268. Anderson contends these demonstrate Giannetto knowingly made false statements and that SPD responded to his requests in bad faith.

The bad faith the PRA permits an inmate to recover for must stem from "denying the person the opportunity to inspect or copy a public record." RCW 42.56.565. The misstatements about which Anderson complains do not evidence SPD withheld records in bad faith. Anderson complains Giannetto falsely stated he did not pay the 10 percent deposit for the March records request. He does not contend he paid the remaining 90 percent. SPD is not required to send records for which a requestor has not paid. RCW 42.56.120.

21

No. 31568-1-III
*Anderson v. Spokane Police Dep't*

Kevin Anderson appears to have scavenged the record for contradictions. He contrived some and may have found others—though more likely Anderson complains of scrivener errors by an understaffed division that produces, on average, over 10,000 pages per month to the more than 447,000 Spokane County residents it serves. Regardless, none of those contradictions evidence SPD withheld records in bad faith. In the absence of bad faith, Anderson cannot sustain his claim and summary judgment is proper.

CONCLUSION

We affirm the trial court's granting of summary judgment to SPD.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.

22