

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PALMER D. STRAND, PATRICIA N. STRAND, | ) ) ) | No. 34722-2-III |
| Appellants, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| SPOKANE COUNTY and SPOKANE COUNTY ASSESSOR, | ) ) ) | |
| Respondents. | ) | |

SIDDOWAY, J. — Patricia and Palmer Strand appeal the partial summary judgment

dismissal of their Public Records Act (PRA)[1] action against Spokane County (County)

and what they argue are inadequate penalties and costs awarded for issues on which they

prevailed. Ms. Strand had requested records explaining property valuation work relevant

to the assessment of the couple's residence, and their complaint alleged that the County

delayed disclosure and withheld responsive documents.

We hold that an attorney need not appear of record in a PRA action for legal

services to be compensable if the services were reasonably incurred in litigating a matter

---

[1] Chapter 42.56 RCW. Judicial review of agency action is authorized by RCW 42.56.550.

on which a PRA plaintiff prevails. While Ms. Strand appeared pro se in the action below, she presented evidence that she had sought and paid for legal advice relevant to the prosecution of the couple's claims. We remand for the trial court to consider whether all or any part of the Strands' consulting attorney fees should be awarded. We otherwise affirm.

## FACTS AND PROCEDURAL BACKGROUND

Patricia Strand has been concerned for years about what she believes have been excessive valuations by the Spokane County Assessor of her and her husband's residential property. On March 2, 2015, she submitted a public records request to the County, asking for the basis of its valuation of nine properties. She specifically requested "all records that show what caused the changes in value of land and/or structures on the . . . parcels," asking in some cases for records going back to 2010 and in others for records going back to 2013. Clerk's Papers (CP) at 20. The County timely acknowledged receipt of the request and said an installment response would be provided by March 12.[2]

Ms. Strand's request was assigned to Frank Oesterheld, an executive assistant to the assessor. On March 13, Mr. Oesterheld e-mailed Ms. Strand that third-party notification was necessary, which would delay production until March 27.

---

[2] All communications we recount as taking place prior to the commencement of the PRA action took place in 2015.

On March 27, Mr. Oesterheld e-mailed Ms. Strand a narrative response to her request. It was followed by a table identifying, in detail, "the parts of your request for which we have provided records, the parts for which we could not provide records because the records did not exist, are statutorily exempt, or for which our statutory obligations are satisfied another way." CP at 44. He produced 937 pages of responsive records by providing a hyperlink to a County file transfer protocol site from which she could download them.

In April, Mr. Oesterheld and Ms. Strand exchanged further e-mails about her PRA request. Ms. Strand expressed frustration that she had not received responsive records. Mr. Oesterheld responded with explanations of why the records provided were responsive and how the County had gone beyond the requirements of the PRA by creating records and even reformatting records to suit her needs. Ms. Strand submitted additional PRA requests on April 7 and 14, and on both occasions, Mr. Oesterheld provided timely, page and a half long responses explaining why he was convinced that the County had nothing more that was responsive. In his response to the April 14 request, he surmised that "[t]he main point of contention seems to be your assertion that these records merely substantiate the Assessor's valuation rather than establishing it. What you fail to understand is that the same data we use to establish the valuation is what we use to substantiate it." CP at 571.

A year later, in March 2016, the Strands filed the action below. The filing of the lawsuit triggered a further review by the County of its earlier response and revealed that four documents related to a 2011 Board of Tax Appeals (BTA) matter involving another property owner had been overlooked. On May 3, Mr. Oesterheld sent a letter to Ms. Strand about the "[l]ater discovered documents" and the County's obligation to produce them. CP at 283 (boldface omitted). He explained that the BTA documents—amounting to 20 pages—had been missed because they should have been destroyed in 2011 according to State retention schedules.

The next week, the County moved for summary judgment dismissing the Strands' complaint. The Strands opposed summary judgment, arguing that responsive records had not been produced. They presented, as an exhibit, 79 pages of County records relating to Spokane County parcel 17274.9110, a subject matter of Ms. Strand's request. The records had been provided by the County to the owner of parcel 17274.9110 in response to his own record request, and he had shared them with Ms. Strand.

In electronic mail to Ms. Strand dated June 3, 2016, Mr. Oesterheld acknowledged that the County had not produced the records she presented as an exhibit, and produced copies of all 79 pages to her at that time. While questioning the responsiveness of some of the records, he explained he was "including [all] in order to eliminate any issues

4

relative to their production." CP at 305. In a declaration thereafter filed with the court,

he explained:

> Review of parcel #17274.9110 was unusual because the owner did not allow access to property for the purpose of appraising new construction. In lieu of access, the Assessor's Office gathered Building and Planning Department files in order to evaluate the new construction. Those types of records are not contained in the other parcels subject to Mrs. Strand's request because either there was no new construction or access was granted relative to those parcels.

CP at 279.

In filing its reply to the Strands' opposition, the County modified its request for

relief to one for *partial* summary judgment, asking the court to determine that all

responsive records other than the late-produced BTA and parcel 17274.9110 records had

been produced.

At the hearing on the County's motion, Ms. Strand continued to insist that much

material was being withheld. The trial court rejected her argument, explaining in its oral

ruling:

> There's a wealth of cases that stand for the proposition that you cannot, by presenting mere speculation, conjecture, or argument, create a material issue of fact by just saying, I don't agree or just saying something in speculation and conjecture. And, frankly, that's exactly what Ms. Strand is doing. She says: They have it; I know they have it; and, they haven't turned it over to me, this material. But it's pure speculation. It's conjecture. It's argument, and that's all it is.

The law is clear that you can't simply say I didn't get material or you didn't provide it to me and create a material issue of fact in your responsive pleadings, which then would defeat summary judgment.

Report of Proceedings (RP) at 19-20. The court observed that a remaining issue was any penalty to which the Strands were entitled as a result of the County's late production of the BTA and parcel 17274.9110 records. But it observed, "[T]hat is in fact a separate issue," and "I'll be granting the County's motion." RP at 20. The Strands filed a motion for reconsideration that was denied.

The parties later briefed the Strands' request for an award of penalties. The County argued that no penalty was warranted. In support, it submitted Mr. Osterheld's declaration explaining how he had searched for responsive documents. Mr. Oesterheld testified that he searched the assessor's main drive, which contains all of its electronic documents, using, as search terms, each of the nine parcel numbers, the surnames of the parcel's owners, and the words "inspection," "permit" and "appeal." CP at 1383 He manually searched Board of Equalization and BTA appeals files and the final review file. He searched image files linked to ProVal, a software application used for assessment. He searched the assessor's website and the personal drive (H: drive) belonging to residential appraiser Jay Sporn, who was the appraiser of record. He asked appraisal supervisor Joe Hollenback, residential appraisal supervisor Rey Amundson, and commercial appraiser (formerly residential appraiser) Larry Splater if they had any information relevant to any

of the parcels identified in Ms. Strand's request. He printed property record cards from

ProVal and downloaded images from Pictometry, with whom the County contracts to

take aerial photographs and make them accessible through the County's website.

The County also presented evidence that the assessor responded to the oversights

that occurred in responding to the Strands' request by adopting and publishing new

policies designed to prevent such oversights in the future.[3]

The Strands requested the maximum penalty of $100.00 per day, per page, for

both the 427 days that 19 BTA records were withheld and the 454 days that 44 parcel

17274.9110 records were withheld. They also requested $1,180.16 as fees and costs

incurred in pursuing the PRA lawsuit.

After hearing oral argument of the penalty and cost issue, the trial court awarded

$632 in costs to the Strands. This included a $100 transcript cost that the Strands had not

---

[3] The assessor's July 2016 memorandum to "All Staff" stated:

Board of Equalization and State Board of Tax Appeals records are organized by BOE and SBTA case number, which complicates the public records search process because they are not titled nor organized the same way as rest of our records. Effective immediately all BOE and SBTA records will be labeled with the subject parcel number first, then case number, then the date, e.g.: 17355.9014_2016-0404_20160713.

Also, while we have very few paper files (around .005% of our total records stock), all staff who maintain paper files shall review them periodically to insure that they remain current, organized, and retrievable.

There will be no exception to this policy.

CP at 1389 (boldface omitted).

asked for, but that the trial court knew Ms. Strand had ordered from its department. The costs awarded included all costs requested by the Strands other than their request for $612 in attorney fees. The court explained that the attorney fees could not be awarded because Ms. Strand had appeared pro se throughout the proceedings. The court expressed "no doubt" that Ms. Strand had consulted with counsel in the Seattle area, and "[p]robably a very good lawyer[. B]ut she didn't come on board for Ms. Strand officially, so there is no basis for an award of attorney's fees." RP at 39.

Turning to the *Yousoufian*[4] factors, the trial court found no aggravating factors. It explained, "[Y]ou know those aggravators when you see it, and I have seen them in previous cases, and they can be fairly blatant." RP at 40. It added that the "only possible aggravator that could apply" was a lack of training, but it was "hesitant to suggest that's what it is, but it's the only portion of the nine factors that fits. It's de minimis." *Id.*

It found that the mitigating factors applied "across the board." RP at 41. It found no bad faith by the County, and that while some records were produced belatedly, "[t]here was no disregard for the law or Ms. Strand's request." *Id.* It observed that plaintiffs in PRA cases frequently ask for the maximum $100 a day penalty, but such a penalty "would be completely nonsensical under these circumstances." RP at 41. Instead, the court awarded $1 a day for the 407 days that production of the group of BTA

---

[4] *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 467-68, 229 P.3d 735 (2010).

records was delayed, and $1 a day for the 434 days that the production of the group of parcel 17274.9110 records was delayed, for a total penalty of $841. Added to the $632 in costs awarded, the Strands were awarded a total of $1,473. They appealed.

In January 2018, more than a year after the trial court entered its award of penalties and costs, the Strands filed, in this court, a "Motion to Reopen the Record for New Evidence."[5] The motion asks this court to consider 12 pages of 50 photos that Ms. Strand represents were provided to her in response to a different PRA request. Our commissioner referred the motion to the panel.

ANALYSIS

The Strands challenge the trial court's decision granting partial summary judgment, its denial of their motion for reconsideration, and its award of penalties and fees. They do not devote a section of their opening brief to the trial court's reconsideration decision, so we will not review that challenge. *See* RAP 10.3(a)(6) (an appellant's brief must contain argument in support of each issue presented for review, together with citations to legal authority and references to relevant parts of the record). "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2013).

---

[5] We note the timing only because it reveals that the Strands could not have moved the trial court to consider the evidence under CR 60(b)(3).

No. 34722-2-III
*Strand v. Spokane County*

We first address the Strands' motion to reopen the record and then turn to their challenges to the partial summary judgment decision and the penalty and fee award.

I.     THE STRANDS' PROPOSED NEW EVIDENCE IS NOT ELIGIBLE FOR CONSIDERATION UNDER THE RULES OF APPELLATE PROCEDURE

The Strands' January 2018 motion to reopen evidence asserts that 50 photographs attached to the motion prove additional PRA violations.

Appellate courts will not consider evidence that is not in the record. *State v. Bugai*, 30 Wn. App. 156, 158, 632 P.2d 917 (1981). RAP 9.10 through 9.12 set forth the circumstances under which parties can move to supplement the record so that additional material can be considered on appeal. Specific to appellate review of *summary judgment orders*, RAP 9.12 provides:

> On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court. The order granting or denying the motion for summary judgment shall designate the documents and other evidence called to the attention of the trial court before the order on summary judgment was entered. Documents or other evidence called to the attention of the trial court but not designated in the order shall be made a part of the record by supplemental order of the trial court or by stipulation of counsel.

"The purpose of this limitation is to effectuate the rule that the appellate court engages in the same inquiry as the trial court." *Wash. Fed'n of State Emps., Council 28, AFL-CIO v. Office of Fin. Mgmt.*, 121 Wn.2d 152, 157, 849 P.2d 1201 (1993).

The rule does not permit us to consider the photographs.[6]

II.     BECAUSE THE STRANDS DID NOT PRESENT EVIDENCE OF A GENUINELY DISPUTED ISSUE OF FACT REQUIRING TRIAL, PARTIAL SUMMARY JUDGMENT WAS APPROPRIATE

The Strands argue the trial court erred when it granted the County's motion for partial summary judgment. We review summary judgment decisions de novo, viewing the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

The moving party bears the initial burden of establishing that it is entitled to judgment because there are no disputed issues of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989), *overruled in part on other grounds*, 130 Wn.2d 160, 922 P.2d 59 (1996) (plurality opinion). If it makes that initial showing, then the burden shifts to the nonmoving party to demonstrate a genuine issue that requires trial. *Id*. at 225-26. Mere allegations or conclusory statements of facts, unsupported by evidence, do not sufficiently establish such a genuine issue. *Baldwin v. Sisters of*

---

[6] Spokane County argues that 26 of the 50 photos would have not been responsive to Ms. Strand's March 2016 request because they were dated after the date of that request; 19 would not have not been responsive because they were dated before the date range provided by her request; and of the 5 remaining photos, only 2 would have been responsive. They were available online using a search by parcel number. The County asserts that the remaining 3 undated photos were also available online, assuming, arguendo, they were responsive to Ms. Strand's request.

*Providence in Wash., Inc.*, 112 Wn.2d 127, 132, 769 P.2d 298 (1989). The nonmoving party "may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value." *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

In support of the County's motion for summary judgment, which it later reframed as a motion for partial summary judgment, the County filed two declarations by Mr. Oesterheld. Mr. Oesterheld testified that other than the later produced BTA and parcel 17274.9110 records, all County records responsive to Ms. Strand's request were produced to her on March 27, 2015. Attached to his declarations was his correspondence with Ms. Strand, in which he answered questions and provided explanations. The County's submissions met its initial burden of demonstrating that it was entitled to the partial summary judgment it was requesting. The burden shifted to the Strands.

The Strands argue on appeal that Mr. Oesterheld was not credible. But the trial court does not weigh the evidence or assess witness credibility on a motion for summary judgment. *Am. Exp. Centurion Bank v. Stratman*, 172 Wn. App. 667, 676, 292 P.3d 128 (2012). Once a genuine issue of material fact is shown, an important purpose of trial is to allow the parties to discredit the evidence provided by adverse witnesses. But until then, an attack on credibility is insufficient, standing alone, to require trial.

The Strands argue that the County's response that "Onsite Pictures" requested were "[a]vailable online" violated the PRA. CP at 44; Br. of Appellant at 29. This argument was not made in responding to the County's motion. The record reveals two submissions filed by the Strands in response to the County's motion prior to the time the motion was granted on July 1, 2016: their initial response and a rebuttal brief. In neither submission did the Strands complain that in referring them to information available online, the County failed to satisfy the option for such a response provided by RCW 42.56.520(1)(b).[7] RAP 2.5(a) states the general rule for appellate disposition of issues not raised in the trial court: appellate courts will not entertain them. *State v. Guzman Nunez*, 160 Wn. App. 150, 157, 248 P.3d 103 (2011), *aff'd*, 174 Wn.2d 707, 285 P.3d 21 (2012).

The Strands also raise a new argument on appeal that because the County requested summary judgment in a memorandum in support of summary judgment rather than in a freestanding motion, it violated CR 5 and 56. Here, too, by not objecting in the

---

[7] In her motion for reconsideration, Ms. Strand argued that the County failed to comply with RCW 42.56.520(1)(b) because its website "[was] not accompanied by a certification that all photos available from 3/2/2015 through the present are on that website any time she accesses it." CP at 408. No authority was cited for the certification she argues was required. The record reveals that in response to Ms. Strand's claim to be unable to locate photographs, Mr. Oesterheld provided her with a hyperlink on April 9, 2015, and with the website address on June 3, 2016. In moving for reconsideration, she concedes that he provided her with the address to the County's website in June 2016.

trial court where this technicality could have been addressed, any issue was waived. RAP 2.5(a).

The Strands argue that the assessor's office conducted an inadequate search. Judicial review of agency actions is available to a plaintiff who is denied the opportunity to inspect or copy a public record or who is provided with an unreasonable estimate of time for response to a request—not to otherwise test the extent of an agency's search. RCW 42.56.550. Moreover, to prove that a search was inadequate, the Strands would need to present evidence of how the search was conducted. They have not. They merely speculate from the late production received. The late production was not addressed by the motion for partial summary judgment, which ultimately addressed only records other than the BTA and parcel 17274.9110 records.

Finally, the Strands argue that more records *should* exist at the assessor's office than were produced. The PRA only requires that access be granted to existent records, not nonexistent records that one believes should exist. *Sperr v. City of Spokane*, 123 Wn. App. 132, 136-37, 96 P.3d 1012 (2004). This argument was addressed by the trial court's explanation to Ms. Strand that "you cannot, by presenting mere speculation, conjecture, or argument, create a material issue of fact." RP at 19; *and see* CR 56(e).

III.    NO ABUSE OF DISCRETION IS SHOWN IN THE TRIAL COURT'S AWARD OF PENALTIES, BUT REMAND IS REQUIRED FOR FURTHER CONSIDERATION OF THE REQUEST FOR ATTORNEY FEES

Finally, the Strands argue the trial court abused its discretion when it awarded them penalties and costs of only $1,473.

Addressing penalties first, the PRA gives the trial court discretion to award a prevailing party "an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record." RCW 42.56.550(4).

The *Yousoufian* court announced seven mitigating and nine aggravating factors that trial courts should use as a guide in determining penalty amounts. 168 Wn.2d at 467-68. The factors are nonexclusive and for guidance only. *Id*. at 468. No single factor controls, nor do the factors infringe on the trial court's considerable discretion in determining the appropriate penalty. *Id*.

We review a trial court's award of penalties under the PRA for an abuse of discretion. *Zink v. City of Mesa*, 4 Wn. App. 2d 112, 123, 419 P.3d 847, *review denied*, 192 Wn.2d 1004, 430 P.3d 251 (2018). An abuse of discretion occurs when a decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Id.*

The section of the Strands' brief devoted to their challenge to the trial court's award of penalties does nothing more than conclusorily state the different per day penalties they believe were warranted, and how they believe records should have been grouped. They do not dispute the evidence of the search conducted by the County or the remedial action taken by the assessor to prevent records from being missed in future

15

searches. The extent and timeliness of Mr. Oesterheld's responses to questions and concerns raised by Ms. Strand is undisputed.

The trial court was aware of the *Yousoufian* factors and applied them in arriving at the $1 a day penalty for the two groups of records. No abuse of discretion is shown.

As for costs, the PRA provides for a mandatory award to a prevailing record requester of "all costs, including reasonable attorney fees, incurred in connection with" an action seeking judicial review of agency action. RCW 42.56.550(4). This court has interpreted "all costs" liberally to include "all of the reasonable expenses [the prevailing party] incurred in gaining access to the requested records," including "reasonable costs incurred in litigating the dispute." *Am. Civil Liberties Union of Wash. v. Blaine Sch. Dist. No. 503*, 95 Wn. App. 106, 117, 975 P.2d 536 (1999). We review an award of attorney fees and costs under the PRA for abuse of discretion. *Kitsap County Prosecuting Att'y's Guild v. Kitsap County*, 156 Wn. App. 110, 120, 231 P.3d 219 (2010).

The Strands requested reimbursement for the cost of Ms. Strand's consultation with Seattle-based attorney Michele Earl-Hubbard, producing evidence of their communications and Ms. Earl-Hubbard's invoice. They argue persuasively that record requesters who cannot afford to retain counsel to represent them in a PRA action, but

16

who consult an attorney for advice on pursuing the action, should be able to recover the cost of the limited legal services they can afford.

The County cites *West v. Thurston County* for a rule the trial court likely had in mind: that where a prevailing record requester has proceeded pro se, incurring no attorney fees, the statutory provision for reasonable attorney fees does not apply. 168 Wn. App. 162, 195, 275 P.3d 1200 (2012). The facts of this case are different. The Strands are not asking to be compensated for Ms. Strand's own time and effort, but for legal fees they demonstrably incurred.

We remand the case for consideration of whether the Strands should be awarded all or any part of the $612 in attorney fees they claim to have reasonably incurred in connection with the PRA action. We otherwise affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____                _____
Fearing, J.                                                          Pennell, A.C.J.